**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MAZ ENCRYPTION TECHNOLOGIES LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| BLACKBERRY CORPORATION, | ) ) |
| Defendant. | ) ) ) |

C.A. No. 13-304-LPS

**DEFENDANT BLACKBERRY CORPORATION'S BRIEF IN SUPPORT OF ITS
*DAUBERT* MOTION TO EXCLUDE TESTIMONY OF CHASE PERRY**

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................... 2

II. FACTUAL BACKGROUND .................................................................................. 2

III. LEGAL STANDARD ............................................................................................. 3

IV. ARGUMENT .......................................................................................................... 4

    A. Mr. Perry's Methodology is Fatally Flawed By Improperly Relying on Information Not Tied to the Patent-in-Suit ....................................................................... 4

        1. Mr. Perry Improperly Relies on General Information Regarding Patent Litigation Trends in Delaware ................................................................................................ 4

        2. Mr. Perry Improperly Relies on Non-Comparable General Technology Licenses that are Not Properly Tied to the Patent-in-Suit ..................................................... 6

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

V. CONCLUSION ....................................................................................................... 9

# TABLE OF AUTHORITIES

*Apple Inc. v. Motorola, Inc.*
   757 F.3d 1286 (Fed. Cir. 2014) ............................................................................ 4, 6

*Avocent Redmond Corp. v. Rose Elecs.*
   No. C06-1711RSL, 2013 WL 8844098 (W.D. Wash. Mar. 11, 2013) ................... 5, 6

*Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*,
   350 F. Supp. 2d 582 (D. Del. 2004) ............................................................................ 3

*Chico's Fas, Inc. v. Clair*
   No. 2:13-cv-792, 2015 WL 3496003 (M.D. Fla. June 3, 2015) .................................. 6

*CSIRO v. Cisco Sys., Inc.*
   809 F.3d 1295 (Fed. Cir. 2015) ............................................................................. 3, 4

*DataQuill Ltd. v. High Tech Computer Corp.*
   887 F. Supp. 2d 999 (S.D. Cal. 2011) ........................................................................ 9

*Daubert v. Merrell Dow Pharms.*
   509 U.S. 579 (1993) .................................................................................................... 2

*Furlan v. Schindler Elevator*
   516 F. App'x 201 (3d. Cir. 2013) ............................................................................... 3

*In re Paoli R.R. Yard PCB Litig.*
   35 F.3d 717 (3d Cir. 1994) .......................................................................................... 3

*Intellectual Ventures I LLC v. Xilinx*
   No. 10-1065, 2014 WL 1814384 (D. Del. Apr. 14, 2014) ...................................... 2, 3

*M2M Solutions LLC v. Enfora, Inc.*
   -- F. Supp. 3d --, No. 12-0032, 2016 WL 908790 (D. Del. Mar. 9, 2016) ................. 7

*Mars, Inc. v. TruRX LLC*
   No. 6:13-cv-526 (E.D. Tex. Apr. 18, 2016) ................................................................ 6

*ResQNet.com v. Lansa*
   594 F.3d 860 (Fed. Cir. 2010) .................................................................................... 5

*Robocast, Inc. v. Microsoft Corp.*
   No. 10-1055, 2014 WL 350062 (D. Del. Jan. 29, 2014) ............................................ 6

*Uniloc USA, Inc. v. Microsoft Corp.*
   632 F.3d 1292 (Fed. Cir. 2011) ................................................................................... 7

*VirnetX, Inc. v. Cisco Sys., Inc.*
   767 F.3d 1308 (Fed. Cir. 2014) .......................................................................... 4, 5, 8

*ZF Meritor LLC v. Eaton Corp.*
   646 F. Supp. 2d 663 (D. Del. 2009) ............................................................................ 3

## I. INTRODUCTION

Testimony of a damages expert is intended to aid the jury. The proposed testimony of Plaintiff's damages expert, Chase Perry, will not aid the jury because it fails to meet the standards for reliable, admissible expert testimony. In reaching his conclusion of a reasonable royalty amount, Mr. Perry relies on a settlement value of the litigation between Plaintiff and BlackBerry and a likelihood of BlackBerry being found liable by a jury. Mr. Perry applies the following formula to reach his conclusion:

$$\text{Expected Damages} = \text{Settlement Value} / \text{Likelihood of Liability}$$

Ex. 1 at 14. However, the values for the settlement value and the likelihood of liability Mr. Perry uses in his formula are not applicable to the present case in two ways: (1) Mr. Perry erroneously relies on license agreements and surveys that are not tied to the patent-in-suit; and (2) Mr. Perry failed to properly apportion his analysis regarding a comparable license agreement to the patent-in-suit. In doing so, Mr. Perry has employed flawed methodology that has been expressly proscribed by the Federal Circuit. Defendant therefore requests the Court perform its gatekeeping role and exclude Mr. Perry's testimony.

## II. FACTUAL BACKGROUND

On December 15, 2015, Plaintiff MAZ Encryption Technologies LLC ("MAZ") served the opening report of their damages expert, Chase Perry. Ex. 1. On January 22, 2016, Defendant BlackBerry Corp. ("BlackBerry") served its Rebuttal Expert Report of John Jarosz. On February 22, 2016, Plaintiff served a reply report from Mr. Perry. Ex. 2. Mr. Perry was deposed on March 16, 2016, and expert discovery closed on March 25, 2016.

## III. LEGAL STANDARD

Under Federal Rule of Evidence 702, expert testimony is admissible if it will assist the trier of fact in determining the facts at issue or understanding the subject matter at hand (*i.e.*, it is reliable and relevant to the issues at hand). *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993). *Daubert* assigns to the Court an essential gatekeeping function to ensure that a proposed expert's testimony is sufficiently reliable to be considered by the jury. *Intellectual Ventures I LLC v. Xilinx*, No. 10-1065, 2014 WL 1814384 at *2 (D. Del. Apr. 14, 2014); *Furlan v. Schindler Elevator*, 516 F. App'x 201, 205 (3d. Cir. 2013). The trial judge must conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.

The burden is on the party offering an expert as an expert witness to demonstrate that his proposed testimony meets the *Daubert* criteria. *Intellectual Ventures*, 2014 WL 1814384 at *2. "*[A]ny* step that renders the analysis unreliable under the *Daubert* factors *renders the expert's testimony inadmissible.*" *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994) (emphasis in original); *see also* Fed. R. Evid. 702. Moreover, expert opinions based on random, subjective data are insufficient to meet the reliability standards. *See Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*, 350 F. Supp. 2d 582, 594 (D. Del. 2004) (excluding opinion from damages expert because the expert failed to develop an objective basis in the record for such opinions).

When a judge "analyzes whether an expert's data is of a type reasonably relied on by experts in the field, he or she should assess whether there are good grounds to rely on this data to draw the conclusion reached by the expert." *ZF Meritor LLC v. Eaton Corp.*, 646 F. Supp. 2d 663, 667 (D. Del. 2009) (quoting *In re Paoli R.R.*, 35 F.3d at 749). In the damages context, the

Federal Circuit has particularly warned that "given the great financial incentive parties have to exploit the inherent imprecision in patent valuation, courts must be proactive to ensure that the testimony presented – using whatever methodology – is sufficiently reliable to support a damages award." *CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015). "While questions regarding which facts are most relevant for calculating a reasonable royalty are properly left to the jury, a critical prerequisite is that the underlying methodology be sound." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014).

IV. **ARGUMENT**

In making a reasonable royalty determination, Mr. Perry failed to tie his analysis to the patent-in-suit and the facts of this case. These missteps render his analysis unreliable. Where, as here, "a potentially reliable theory is not tied to the facts of the case, the expert testimony is inadmissible." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1325 (Fed. Cir. 2014) (overruled on other grounds). For these reasons, Mr. Perry's reasonable royalty analysis must be excluded.

**A. Mr. Perry's Methodology is Fatally Flawed by Improperly Relying on Information Not Tied to the Patent-in-Suit**

**1. Mr. Perry Improperly Relies on General Information Regarding Patent Litigation Trends in Delaware**

In developing his damages estimate, Mr. Perry predicates his entire analysis on what he purports to be a perceived "likelihood of liability" at the time of the hypothetical negotiation. Ex. 1 at 14-15. But Mr. Perry's only basis for this "likelihood of liability" is information regarding the success of all patent holders in the District of Delaware from a 2011 and a 2014 PricewaterhouseCoopers LLP "Patent Litigation Study." *Id.* at 14 n.42. This study is entirely divorced from the subject matter of the patent-in-suit and violates the "essential requirement for reliability under *Daubert* [] that the ultimate reasonable royalty award must be based on the

incremental value that the patented invention adds to the end product." *CSIRO*, 809 F.3d at 1301.

Mr. Perry begins his damages analysis with the following formula:

***Expected Damages = Settlement Value / Likelihood of Liability***

Ex. 1 at 14 (emphasis added). Mr. Perry determined the "Likelihood of Liability" value to be 40%, based solely on the fact that "[f]or patent infringement litigation in the District of Delaware, statistics show that patent holders tend to prevail approximately 40% of the time." *Id.* This statistic is admittedly a general figure relating to all patent litigation lawsuits in Delaware, and therefore is not directed specifically to lawsuits involving parties similarly situated to the parties in a hypothetical negotiation, or patents that are comparable to the patent-in-suit. As Mr. Perry admits, he has no idea whether any of the cases in this study are technologically comparable to the patent-in-suit. Ex. 3 at 84:8-11. Indeed, Mr. Perry stated that he believes that this figure need not be tied to the patent-in-suit simply because, in his view, the analysis required to do so is "an impossible exercise." *Id.* at 84:11-20. Instead, Mr. Perry makes his own judgment that his analysis need not be tied to the patent-in-suit because "[t]here's no indication that a jury in some venue or a judge, for that matter, in some venue would treat different technologies and different cases differently." *Id.* at 85:8-17.

But the law requires Mr. Perry to ensure that his reasonable royalty analysis "carefully tie[s] proof of damages to the claimed invention's footprint in the market place." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014) (quoting *ResQNet.com v. Lansa*, 594 F.3d 860, 869 (Fed. Cir. 2010)). Regardless of whether or not this is actually an "impossible exercise," Mr. Perry has failed to do so. Mr. Perry's 40% figure based on the percentage of patent owner successes in all Delaware litigations "tells us nothing about the actual or perceived

5

strength of [MAZ's] claims as it was negotiating the settlement with [BlackBerry]." *Avocent Redmond Corp. v. Rose Elecs.*, No. C06-1711RSL, 2013 WL 8844098, at *5 (W.D. Wash. Mar. 11, 2013) (excluding expert's "litigation-success-rate theory [of patent holders as 33% nationwide] as a surrogate for facts and circumstances related to the patents-in-suit"). Mr. Perry's "one-size-fits-all multiplier would treat all litigation settlements in the same way, regardless of the underlying facts," and is therefore improperly divorced from the facts of this case. *Id.* ("The Federal Circuit has found that such shortcuts are 'arbitrary, unreliable, and irrelevant' and their use 'fails to pass muster under *Daubert*.'").

Because his damages analysis is based entirely on a figure that is "not tied to the facts of the case, [Mr. Perry's] expert testimony is inadmissible." *Apple Inc.*, 757 F.3d at 1325; *Robocast, Inc. v. Microsoft Corp.*, No. CV 10-1055-RGA, 2014 WL 350062, at *3 (D. Del. Jan. 29, 2014) (an expert who applied a 50/50 split without considering the particular circumstances of the parties "did not tie his reasonable royalty analysis to the facts of the case, and [] is therefore excluded"); *see Mars, Inc. v. TruRX LLC*, No. 6:13-cv-526 at *10-11 (E.D. Tex. Apr. 18, 2016) (slip copy) (because the expert "wholly failed to address whether the litigation verdict is comparable to the hypothetical license in this case . . . his testimony on that issue must be excluded"); *Chico's Fas, Inc. v. Clair*, No. 2:13-cv-792, 2015 WL 3496003, at *4 (M.D. Fla. June 3, 2015) (excluding expert's opinion regarding non-comparable licenses where it would be "impossible" to determine comparability of the licenses).

### 2. Mr. Perry Improperly Relies on Non-Comparable General Technology Licenses that are Not Tied to the Patent-in-Suit

Mr. Perry further relies on third-party public licenses described in a Licensing Executives Society study with respect to his discussion regarding *Georgia-Pacific* factor No. 12. Ex. 1 at 25. These licenses are not comparable to the patent-in-suit, as Mr. Perry openly admits.

> Q. So is the study on the licenses that are included in the study technologically comparable to the technology at issue with respect to the '681 Patent?
> A. Not necessarily.
> Q. So what types of licenses are included in the LES study?
> A. There's all types of licenses. There's patent only. There's mixed. There's from different types of firms and different types of industries, different types of technology. And it's all kind of sliced and diced, you could say, in that report.
> Q. Did you look at any specific licenses that were included in the study?
> A. No.
> Q. Did you compare the technology of any of the licenses in the study to the technology of the '681 Patent?
> A. No. Neither of those exercises would be particularly relevant to the purpose I'm using the study for.

Ex. 3 at 130:14-131:9. Indeed, Mr. Perry explains that he is "not aware of any customary royalty rates for the mobile communications industry generally or for encryption technology specifically." Ex. 1 at 25. Because these general licenses are not tied to the technology of the patent-in-suit, there is no "basis in fact to associate the royalty rates used in [these] prior licenses to the particular hypothetical negotiation at issue in [this] case." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011).

In an attempt to excuse his reliance on these non-comparable licenses, Mr. Perry states that "I discuss this industry/market data as a reasonableness check only." Ex. 1 at 25. But this Court has specifically warned against use of generalized, non-comparable licenses, even if they are simply used as a reasonableness check. In *M2M Solutions LLC v. Enfora, Inc.*, – F. Supp. 3d –, No. 12-0032, 2016 WL 908790, at *9 (D. Del. Mar. 9 2016), Judge Andrews rejected the "argument that [an expert] can use incomparable licenses in his reasonable royalty analysis if he only uses them as a "sanity check," rather than using them to drive the analysis," finding that doing so violates "Federal Circuit precedent . . . that for a license to be used in a damages analysis, the license must be proven comparable to the hypothetical negotiation." Mr. Perry's

reliance on the Licensing Executives Society study is improper and fails to "carefully tie proof of damages to the claimed invention's footprint in the market place." *VirnetX*, 767 F.3d at 1327. His testimony on these non-comparable licenses should therefore be excluded.

**B.  Mr. Perry's Methodology is Fatally Flawed for Failing to Apportion His Analysis of the RPX License Agreement to the Patent-in-Suit**

In making his initial *Georgia-Pacific* factor No. 1 determination utilizing the formula:

***Expected Damages = Settlement Value / Likelihood of Liability***

as discussed in Section IV.A.1 *supra*, to determine the "Settlement Value" figure, Mr. Perry relies entirely upon a ████████████████████████████████████████████

████████████████████████ ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████

          ████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████ Mr. Perry

---

[1] ████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████

substitutes the ▮▮▮▮ figure into his formula as the "Settlement Value" figure. In his reply report and at his deposition, Mr. Perry explained that the ▮▮▮▮

▮▮▮▮

▮▮▮▮

▮▮▮▮

▮▮▮▮

▮▮▮▮

▮▮▮▮

▮▮▮▮

"Where a license covers a portfolio of patents or includes other intellectual property or services, Plaintiff must present evidence sufficient to allow the jury to weigh the economic value of the patented feature against the economic value of the features and services covered by the license agreement." *DataQuill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1023-24 (S.D. Cal. 2011). Mr. Perry has not provided any analysis with respect to the ▮▮▮▮ ▮▮▮▮ Without any analysis on how ▮▮▮▮ ▮▮▮▮ Mr. Perry's analysis is fatally flawed. Once again, Mr. Perry has failed to tie his damages analysis to "the facts of this case." His testimony on the ▮▮▮▮ is therefore inadmissible.

## V. CONCLUSION

For the foregoing reasons, Defendant requests that the testimony of Plaintiff's expert Chase Perry be excluded under *Daubert* with respect to: (1) Mr. Perry's analysis under *Georgia-*

9

*Pacific* factor No. 1 of the appropriate "Settlement Value" and "Likelihood of Liability;" and (2) Mr. Perry's analysis regarding non-comparable licenses.

Dated: April 22, 2016

Respectfully submitted,

*/s/ Jamie L. Edmonson*
Jamie L. Edmonson (Bar No. 4247)
Daniel A. O'Brien (Bar No. 4897)
Venable LLP
1201 North Market Street
Suite 1400
Wilmington, DE 19801
(302) 298-3535
jledmonson@venable.com
dao'brien@ venable.com

William D. Coston (*pro hac vice*)
Jeffri A. Kaminski (*pro hac vice*)
Calvin R. Nelson (*pro hac vice*)
Venable LLP
575 7th Street, NW
Washington, DC 20004
wdcoston@venable.com
jakaminski@venable.com
crnelson@venable.com

*Counsel for Defendant BlackBerry Corporation*