**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

MAZ ENCRYPTION TECHNOLOGIES, LLC,

Plaintiff,

v.

BLACKBERRY CORPORATION,

Defendant.

C.A. No. 13-304-LPS

**PUBLIC REDACTED VERSION**

**PLAINTIFF MAZ ENCRYPTION TECHNOLOGIES LLC'S ANSWERING BRIEF IN RESPONSE TO DEFENDANT'S *DAUBERT* MOTION TO EXCLUDE THE TESTIMONY OF CHASE PERRY**

May 11, 2016

OF COUNSEL:

Neal G. Massand
Hao Ni
Timothy Wang
Ni, Wang & Massand, PLLC
8140 Walnut Hill Ln., Ste. 310
Dallas, TX 75231
Tel: (972) 331-4600
Fax: (972) 314-0900
nmassand@nilawfirm.com
hni@nilawfirm.com
twang@nilawfirm.com

BAYARD, P.A.

Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
Sara E. Bussiere (sb5725)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
sbussiere@bayardlaw.com

*Attorneys for MAZ Encryption Technologies LLC*

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................ 1

II. LEGAL STANDARD ........................................................ 2

III. ARGUMENT AND AUTHORITIES ........................................................ 4

A. Mr. Perry's Methodology Is Not Fatally Flawed ........................................................ 4

1. Mr. Perry's Reliance On The Patent Litigation Studies Is Not Improper ... 4

2. Mr. Perry's Reliance On The LES Study Is Not Improper ........................................................ 7

B. Mr. Perry's Methodology Properly Assesses the RPX Agreement ........................................................ 8

IV. CONCLUSION ........................................................ 9

# TABLE OF AUTHORITIES

**Cases**

*Avocent Redmond Corp. v. Rose Elecs.*,
No. C06-1711RSL, 2013 U.S. Dist. LEXIS 188286 (W.D. Wash. Mar. 11, 2013) ................ 6

*Daubert v. Merrell Dow Pharms.*,
509 U.S. 579 (1993) ........................................................................................................ 2

*Diviero v. Uniroyal Goodrich Tire Co.*,
114 F.3d 851 (9th Cir. 1997) ........................................................................................ 3

*GE v. Joiner*,
522 U.S. 136 (1997) ........................................................................................................ 3

*Knight v. Kirby Inland Marine Inc.*,
482 F.3d 347 (5th Cir. 2007) ........................................................................................ 3

*Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010) ....................................................................................... 3

*Pipitone v. Biomatrix, Inc.*,
288 F.3d 239 (5th Cir. 2002) ........................................................................................ 3

*ResQNet.com, Inc. v. Lansa, Inc*,
594 F.3d 860 (Fed. Cir. 2010) ....................................................................................... 4

*Robocast, Inc. v. Microsoft Corp.*,
C.A. No. 10-1055-RGA, 2014 U.S. Dist. LEXIS 5836 (D. Del. Jan. 16, 2014) ............. 3, 4, 5

*TWM Mfg. v. Dura Corp.*,
789 F.2d 895 (Fed. Cir. 1986) ....................................................................................... 4

**Statutes**

35 U.S.C. § 284 (2012) .................................................................................................... 1

35 U.S.C. §§ 12-29 (2012) ................................................................................................ 1

Fed. R. Evid. 702 ........................................................................................................ 2, 3

## I. INTRODUCTION

Defendant BlackBerry Corporation's ("BlackBerry") *Daubert* Motion to Exclude the Testimony of Chase Perry (the "Motion") should be denied. Mr. Perry's testimony is based upon sufficient facts and data and is the product of reliable principles and methods that are properly applied to the facts of this case. Defendant's attempts to undermine the reliability of Mr. Perry's testimony are based on misreadings and a misunderstanding of the testimony. Defendant's argue that Mr. Perry erroneously relies on license agreements and surveys that are not tied to the patent-in-suit and that Mr. Perry failed to apportion his analysis regarding a comparable license agreement to the patent-in-suit. In reality, however, Mr. Perry applied 35 U.S.C. § 284 and the *Georgia Pacific* line of cases to arrive at a reliable up-front, lump-sum royalty figure.

More specifically, Defendant misstates Mr. Perry's reliance on 2011 and 2014 Pricewaterhouse Coopers LLP "Patent Litigation Studies" as the predicate for his entire analysis. (Defendant Blackberrry Corporation's Brief In Support of its *Daubert* Motion to Exclude the Testimony of Chase Perry ("Brief") at 4.) In reality, Mr. Perry performed a hypothetical negotiation analysis using the universally accepted *Georgia Pacific* ("GP") framework to arrive at his damages opinion. (Expert Report of Chase A. Perry Regarding Damages, attached hereto as Exhibit 1, at 10.) He considered each and every one of the GP factors in doing so. (*Id*. at 12-29.) In reality, Mr. Perry relied on a wealth of information and analysis in adjusting the Option Acquisition Fee in the RPX Agreement, including the likelihood of liability figures in the Patent Litigation Studies.

Defendant also complains of Mr. Perry's use of third-party public licenses described in a Licensing Executives Society ("LES") study. However, the licenses in the LES study are certainly in comparable industries—"communications and telecom" and "communications and

mobile system and devices"—and are evidence that addresses the subject matter of GP Factor 12, which evaluates "the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions." (Ex. 1 at 25); *Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970), *mod. and aff'd,* 446 F.2d 295 (2d Cir. 1971), *cert. denied,* 404 U.S. 870 (1971)

[redacted] Defendant alleges that Mr. Perry did not account for the fact that the MAZ-RPX Agreement covers more than the patent-in-suit and that the negotiated option fee does not account for what Blackberry would pay for a license. Defendant is incorrect with regard to both of these complaints. [redacted] based on a complete and thorough analysis using the appropriate damages methodology, including an analysis of the RPX Agreement, which contains a provision that effectively values a settlement regarding the patent in suit and others.

## II. LEGAL STANDARD

The trial court acts as a "gatekeeper" to exclude expert testimony that does not meet the relevancy and reliability threshold requirements. In this role, the trial court determines the admissibility of expert testimony based on Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993). Accordingly, opinion testimony is not admissible unless: (1) the witness is qualified "as an expert by knowledge, skill, experience, training, or education," Fed. R. Evid. 702; (2) the witness' reasoning or methodology underlying the opinion testimony is scientifically reliable, *Daubert*, 509 U.S. at 592-93; and (3) the testimony is relevant—that is, it

must assist the trier of fact to understand the evidence or to determine a fact at issue. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591.

To satisfy the reliability prong of *Daubert*, an expert's opinion testimony must be based upon "sufficient facts or data" and must be "the product of reliable principles and methods" that are "reliably" applied "to the facts of the case." FED. R. EVID. 702 advisory committee note. When evaluating the reliability of the proffered testimony of an expert, "Rule 702 demands that expert testimony relate to scientific, technical or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs." *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 590 (1993)). "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, and the link between the facts and the conclusion." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (quoting *Heller v. Shaw Indus.*, 167 F.3d 146, 155 (3d Cir. 1999)). "But nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." *GE v. Joiner*, 522 U.S. 136, 146 (1997). However, "[w]hen the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010). That is, a trial court is not permitted under Daubert to "transform a Daubert hearing into a trial on the merits." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002).

This Court has found that lump sum licenses are frequently made in the absence of certainty regarding infringement and validity, and yet they inform the reasonable royalty

calculation. *Robocast, Inc. v. Microsoft Corp.*, Civil Action No. 10-1055-RGA, 2014 U.S. Dist. LEXIS 5836, at *8 (D. Del. Jan. 16, 2014). "Of course, it may also be proper to adjust the reasonable royalty upwards due to this uncertainty." *Robocast*, 2014 U.S. Dist. LEXIS 5836, at *8 (citing *Mondis Tech., Ltd. v. LG Elec., Inc.*, NO. 2:07-CV-565-TJW-CE, 2011 U.S. Dist. LEXIS 78482, at *29 (E.D. Tex. June 14, 2011) (allowing tripling of standard royalty rates to account for uncertainty)); *see also ResQNet.com, Inc. v. Lansa, Inc*, 594 F.3d 860, 872 (Fed. Cir. 2010) ("[A] reasonable royalty may permissibly reflect the fact that an infringer had to be ordered by a court to pay damages rather than agreeing to a reasonable royalty.") (internal quotation marks omitted); *TWM Mfg. v. Dura Corp.*, 789 F.2d 895, 900 (Fed. Cir. 1986) ("That [the patentee] might have agreed to a lesser royalty is of little relevance, for to look only at that question would be to pretend that infringement never happened. It would also make an election to infringe a handy means for competitors to impose a compulsory license policy upon every patent owner.") (internal quotation marks and citations omitted).

## III. ARGUMENT AND AUTHORITIES

### A. Mr. Perry's Methodology Is Not Fatally Flawed

#### 1. Mr. Perry's Reliance On The Patent Litigation Studies Is Not Improper

In this case, Mr. Perry's reliance on the Patent Litigation Studies is not improper. This Court has found that it is proper to adjust a reasonably royalty upwards due to uncertainty. *Robocast*, 2014 U.S. Dist. LEXIS 5836, at *8. That is exactly what Mr. Perry did. In his analysis of GP Factor 1—which considers the royalties received by the patentee for the licensing of the patent-in-suit proving or tending to prove an established royalty—Mr. Perry stated, "A major difference between a hypothetical negotiation on the eve of infringement and a settlement negotiation during litigation is that the parties to the hypothetical negotiation must assume that

the patent is valid and infringed, while settling parties do not. Thus, a patentee is in a better bargaining position in a hypothetical negotiation than in a settlement negotiation, and one would expect the damages calculation in the former to be higher than the settlement amount in the latter, all other things equal." (Ex. 1 at 14.) He went on to state:

> One can adjust for this difference using an application of standard expected value analysis in economics:
>
> Settlement Value = Likelihood of Liability * Expected Damages
>
> One can solve for expected damages if the settlement value and likelihood of liability can be estimated:
>
> Expected Damages = Settlement Value / Likelihood of Liability

(*Id.*)

Mr. Perry relied on the RPX Agreement to estimate the settlement value in the calculation. Importantly, even Defendant's expert cites the RPX Agreement as the "most useful information." (Excerpts from Rebuttal Expert Report of John C. Jarosz ("Jarosz Report"), attached hereto as Exhibit 2.) The settlement value figure, which informs what one of the parties to the hypothetical negotiation, MAZ Technologies, Inc., would have accepted in the hypothetical negotiation reflects a negotiated license amount for the same defendant and the same patent. As such, it is absolutely tied to the facts of this case and is every bit as important to the expected damages calculation as the likelihood of liability.

To estimate likelihood of liability, Mr. Perry relied on the widely cited Patent Litigation Studies, which show that patent holders prevail in litigation in the District of Delaware, the very district where this case is pending, approximately 40% of the time. *See, e.g.*, *Recognicorp, LLC v. Data Design Interactive, LLC et al.*, No. 8:12-cv-1491 (M.D. Fl. 2012); Thomas Lavelle, *PATENT DAMAGES ECONOMICS—THE SIMPLE VIEW* (Oct. 18 2010); Anne Kelley, *Practicing in the Patent Marketplace*, 78 U. Chi. L. Rev. 115 (2011); ALM Media, *Beyond High*

*Tech, Corporate Counsel* (Oct. 2013); DLA Piper, Stays Pending Inter-Partes Review Under the AIA: the First Year (Intellectual Property and Technology News (Issue 21, QI 2014); Michael Elmer, *International Patent Litigation Strategies and Forum Shopping* (Jan. 25 2013); Lee Sabing et al., *Examination of Recent Medical Device Patent Litigation and Lessons to Be Learned* (Sep. 26 2013); Middle George CEO, *Patent Litigation Study Reveals 2012 was a Colossal Year with Patents Granted and Litigations Filed Significantly Increasing* (June 19 2013); Michael J. Mazzeo et al., *Explaining the "unpredictable": An empirical analysis of U.S. patent infringement awards, International Review of Law and Economics* 3558–72 (2013); R. David Donoghue, *Patent Litigation Strategies for Retailers Based Upon the PWC Patent Litigation Study, Practicing Law Instutite* (2016); Michael Risch, *A Generation of Patent Litigation: Outcomes and Patent Quality*, 52 San Diego L. Rev. 2 (2015); *Brief for Huawei Technologies Co., LTD as Amicus Curiae, Halo Electronics, Inc. v. Pulse Electronics, Inc. et al., Nos. 14-1513 & 14-*1520 (Jan. 2016). As such, Mr. Perry's application of the study is tied to the facts of the case. Furthermore, it is what the parties would reference in the hypothetical negotiation.

Contrary to Defendant's allegation, Mr. Perry did not "predicate his entire analysis on what he purports to be a perceived 'likelihood of liability' at the time of the hypothetical negotiation." (Brief at 4.) The likelihood of liability, as calculated for the very district in which this case is pending, was merely one part of the expected damages calculation used in Mr. Perry's analysis of GP Factor 1. Mr. Perry then went on to analyze the remaining 14 GP factors to arrive at his final damages estimate. Defendant's argument is based on a misunderstanding of Mr. Perry's testimony.


Defendant likens Mr. Perry's opinion to the opinion presented by Dr. Kerr in *Avocent Redmond Corp. v. Rose Elecs.*, No. C06-1711RSL, 2013 U.S. Dist. LEXIS 188286 (W.D. Wash. Mar. 11, 2013) (W.D. Wa. March 11, 2013). However, in *Avocent*, Dr. Kerr merely mentioned some of the *Georgia*-Pacific factors, then simply multiplied the most comparable license royalty rate by three. 2013 U.S.188286 at *14. Dr. Kerr's multiplier is based on the alleged success rate of patent holders in litigation nationwide. *Id.* Mr. Perry, however, made an adjustment tailored to this case based upon the success rate of patent holders in the District of Delaware, where this litigation is pending, in his analysis of GP Factor 1. This is precisely the kind of analysis reasonable parties to a hypothetical negotiation would have undertaken. He then considered all of the other GP factors to arrive at his ultimate royalty rate conclusion.

**2. Mr. Perry's Reliance On The LES Study Is Not Improper**

Defendant's argument in this regard is entirely based upon a mischaracterization of Mr. Perry's testimony. While the licenses in the cited LES study are not strictly comparable and therefore not useful for consideration with respect to GP Factors 1 and 2, they are relevant to the subject matter of GP Factor 12, which evaluates the "portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions." *Ga.-Pac. Corp.*, 318 F. Supp. at 1120 . Here the cited study evaluates licenses in comparable businesses, namely "Communications and Telecom and Communications and Mobile System Devices." (Ex. 1 at 25.)

Furthermore, Defendant tries to imply that Mr. Perry used the LES study for a purpose other than what he specifically stated in his report and deposition. In his report, Mr. Perry stated:

[redacted]

(Ex. 1 at 25.) Furthermore, Mr. Perry testified:

> So I don't rely on it to form the basis of my number, but I like to look at the study, whether it's a royalty rate that I have in a Georgia-Pacific analysis or a lump sum royalty that I have -- I think it's a good idea to check it against those numbers and just see if something seems to be awry, is what I would say.

(March 16, 2016, Deposition of Chase Perry, attached hereto as Exhibit 3 at 130:7-13.) Contrary to Defendant's statements, Mr. Perry was not trying to excuse his reliance on the study, but was consistent and up-front about the purpose from the outset. (Brief at 7.)

**B. Mr. Perry's Methodology Properly Assesses the RPX Agreement**

[redacted] because the Option covers more than the '681 Patent and because Blackberry was not a party to the negotiation and resulting agreement. [redacted] is based on a complete and thorough analysis using the appropriate damages methodology, including an analysis of the RPX Agreement, which contains a provision that effectively values a settlement regarding the patent in suit and others. Mr. Perry relied on Daniel Mitry to ascertain the fact that MAZ and RPX did not discuss or even consider which of MAZ's patents Blackberry's products infringed. Reply Expert Report of Chase A. (Perry Regarding Damages, attached hereto as Exhibit 4 at 7.) Further, while "patent peace" may have been a consideration for RPX, there is no indication that the $1 million Blackberry Option Acquisition Fee would have been any different if only the '681 Patent had been conveyed. However, while there is no evidence in the record that would allow either Mr. Perry or Mr. Jarosz to evaluate BlackBerry's position on the RPX Agreement, Mr. Perry did not ignore BlackBerry's position in the hypothetical negotiation. [redacted] Mr. Perry estimates that,

based on the Certicom licenses discussed in GP Factor 12, a reasonable royalty could be even higher than what the RPX Agreement might imply. [REDACTED] [REDACTED], which includes the fact that the hypothetical negotiation involves two parties, and that BlackBerry would likely want a much lower royalty than MAZ. Indeed, the Jarosz Report performs various calculations to recast [REDACTED] as Mr. Jarosz interprets it. However, there is not one cite in the Jarosz Report to either documentary evidence or to an interview of a BlackBerry representative regarding BlackBerry's position on the RPX Agreement. In the absence of such evidence, Mr. Perry's ultimate opinion considers BlackBerry's position and influence on the hypothetical negotiation as best as can be accomplished given the record, contrary to Defendant's assertions.

## IV. CONCLUSION

Defendant's *Daubert* Motion to Exclude the Testimony of Chase Perry should be denied. Mr. Perry's use of the Patent Litigation Studies is appropriate, and Defendant's complaints regarding the reliability of the studies is misplaced. Additionally, Mr. Perry's use of the LES studies is appropriate because the licenses referenced therein are from comparable industries. Furthermore, Mr. Perry's reliance on the Blackberry Option Acquisition Fee from the MAX-RPX Agreement is proper as it accounts for the different scope between the RPX Agreement and the instant hypothetical negotiation and accounts for the fact that Blackberry did not participate in negotiating the RPX Agreement.


May 11, 2016
Redacted Version Filed on May 18, 2016

BAYARD, P.A.

*/s/ Stephen B. Brauerman*

Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
Sara E. Bussiere (sb5725)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
sbussiere@bayardlaw.com

*Attorneys for MAZ Encryption Technologies LLC*

OF COUNSEL:

Neal G. Massand
Hao Ni
Timothy Wang
**Ni, Wang & Massand, PLLC**
8140 Walnut Hill Ln., Ste. 310
Dallas, TX 75231
Tel: (972) 331-4600
Fax: (972) 314-0900
nmassand@nilawfirm.com
hni@nilawfirm.com
twang@nilawfirm.com