## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAZ ENCRYPTION TECHNOLOGIES LLC, | : <br> : <br> : |
| Plaintiff, | : <br> : C.A. No. 13-304-LPS |
| v. | : <br> : |
| BLACKBERRY CORPORATION, | : <br> : |
| Defendant. | : <br> : |

### MEMORANDUM ORDER

1.   In this patent infringement action, Plaintiff, MAZ Encryption Technologies LLC ("MAZ" or "Plaintiff"), alleges that Defendant, Blackberry Corporation ("Blackberry" or "Defendant"), infringes MAZ's U.S. Patent No. 6,185,681 (the "'681 patent"). (D.I. 1) The '681 patent is entitled, "Method of Transparent Encryption and Decryption for an Electronic Document Management System." (D.I. 1-1) Plaintiff filed this lawsuit on February 22, 2013. (D.I. 1)

2.   On April 22, 2016, Defendant filed a motion to exclude the testimony of Plaintiff's damages expert, Chase Perry. (D.I. 164) Defendant's motion contends that Mr. Perry's testimony must be excluded pursuant to Federal Rule of Civil Procedure 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). The Court heard argument on this and other motions on August 17, 2016. (*See* D.I. 219 ("Tr."))

3.   In *Daubert*, 509 U.S. at 597, the Supreme Court explained that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an

1

expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Rule 702 requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert testimony is admissible only if "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). There are three distinct requirements for proper expert testimony: (1) the expert must be qualified; (2) the opinion must be reliable; and (3) the expert's opinion must relate to the facts. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).

4. When a party is found to infringe a valid patent, "the court shall award the claimant damages adequate to compensate for the infringement." 35 U.S.C. § 284. "The most common method for determining a reasonable royalty rate is . . . to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Virnetx, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (internal quotation marks omitted).

5. "[L]icenses may be presented to the jury to help the jury decide an appropriate royalty award." *Ericcsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014); *see also Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (finding that "royalties received by the patentee for the licensing of the patent in suit" is relevant when assessing damages).

6. In reaching his baseline estimate for damages, Mr. Perry relied on a previous license agreement involving the patent-in-suit. (*See* D.I. 166-1 at 12-14) The previous license agreement, however, was made in the context of settling a litigation dispute, and thus did not

2

reflect the royalty the parties would have reached "just before infringement began." Therefore, the damages amount arrived at in the settlement agreement had to be translated into a damages number that the same parties would have arrived at just before infringement began had they, instead, assumed that the patent was infringed and valid. This implies that the amount of the previous settlement would need to be increased to arrive at the royalties that would have been agreed to in a hypothetical negotiation.

7. According to Mr. Perry,

> [a] major difference between a hypothetical negotiation on the eve of infringement and a settlement negotiation during litigation is that the parties to the hypothetical negotiation must assume that the patent is valid and infringed, while settling parties do not. Thus, a patentee is in a better bargaining position in a hypothetical negotiation than in a settlement negotiation, and one would expect the damages calculation in the former to be higher than the settlement amount in the latter.

(*Id.* at 13-14)

8. Mr. Perry attempted to account for this discrepancy by estimating the discount factor the parties used when negotiating the previous license agreement. (*See id.* at 14) Specifically, he reasoned that if "Settlement Value = Likelihood of Liability * Expected Damages," then "Expected Damages = Settlement Value/Likelihood of Liability." (*Id.*)

9. Mr. Perry then arrived at his estimate of expected damages by estimating the likelihood of liability at 40%. (*Id.*)

10. Mr. Perry's estimate for the likelihood of liability was not based on any facts relating to the merits of Plaintiff's case. The estimate did not consider the nature of the patent-in-suit, the accused products, or either party's litigation strategy. Instead, the estimate was based

3

on a study that found that "patent holders tend to prevail approximately 40% of the time" in the District of Delaware. (*Id.*) The Court agrees with Blackberry that Mr. Perry's estimate approach is not reliable as it is not sufficiently tied to the particular facts of this case. *See, e.g., Virnetx*, 767 F.3d at 1334.

11. The Federal Circuit rejected an approach similar to Mr. Perry's when it considered a methodology that did "not say anything about a particular technology, industry, or party." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) (rejecting "25 percent rule" that set baseline royalty rate at 25% of profits on patented invention without considering merits of patentee's case, nature of patented invention, or industry-specific market dynamics). Similarly, a district court confronting facts quite similar to those presented here granted a motion to strike the testimony of an expert who adjusted his estimate based on the fact that "patent holders are successful in only 33% of cases nationwide." *Avocent Redmond Corp. v. Rose Elecs.*, 2013 WL 8844098, at *5 (W.D. Wash. Mar. 11, 2013).

12. Defendant presents other criticisms of Mr. Perry's analysis. For instance, Defendant contends that Mr. Perry's consideration of a study conducted by Licensing Executives Society should be stricken. The Court does not agree and finds, instead, that Defendant's criticism on this point goes to the weight but not the admissibility of Mr. Perry's opinions. Similarly, Defendant's contentions that Mr. Perry improperly considered a potential but unexecuted license to the entirety of MAZ's patent portfolio go to weight and not admissibility.

13. When asked at the hearing whether its motion was directed to excluding the entirety of Mr. Perry's testimony, counsel for Blackberry answered affirmatively. (*See* Tr. at 126 ("Well, we would contend that his entire analysis is no longer helpful to the jury.")) Counsel for

4

MAZ disagreed. (*See id.* at 128 ("I think what they're talking about is a specific part of his analysis, but it's not the entirety of his analysis.")) The Court has only granted the motion with respect to one of the multitude of criticisms Blackberry has directed at Mr. Perry. It may be possible for Mr. Perry to provide an amended report that corrects the unreliable portion of his prior analysis, in sufficient time to permit limited reopening of expert discovery, without throwing off the trial schedule. The Court will direct the parties to meet and confer and provide their proposal(s) on these points.

Accordingly, for the reasons given above, IT IS HEREBY ORDERED that:

A.  Blackberry's motion to exclude Mr. Perry's testimony (D.I. 164) is GRANTED IN PART and DENIED IN PART, to the extent explained above.

B.  The parties shall meet and confer and shall, no later than August 31, 2016, provide the Court a joint status report describing their proposal(s) for whether Mr. Perry should have an opportunity to correct the unreliable portion of his prior analysis and, if so, how the scheduling order should be modified to permit a limited reopening of expert discovery without throwing off the trial schedule.[1]

August 25, 2016
Wilmington, Delaware

HON. LEONARD P. STARK
UNITED STATES DISTRICT COURT

---

[1] By separate order issued today, the Court has denied the parties' cross-motions for summary judgment of infringement/non-infringement. Still pending is Defendant's motion for judgment on the pleadings that the '681 patent is invalid pursuant to Section 101. (*See* D.I. 75) This motion was argued in December, 2015 and again at the August 2016 hearing. (*See* D.I. 143; Tr. 67)

5